UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES,<br>    Plaintiff,<br>v.<br>FRANCISCO PUGA CAMACHO,<br>    Defendant. | Case No.  5:17-cr-00520-2 EJD<br><br>**ORDER DENYING REQUESTS FOR COMPASSIONATE RELEASE**<br><br>Re: ECF Nos. 192, 198 |

Before the Court are Defendant Camacho's motions for compassionate release seeking reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  ECF Nos. 192, 198.  Having reviewed the record and considered the parties' briefs, the Court **DENIES** Defendant's requests for the reasons discussed below.

**I.    BACKGROUND**

Pro se Defendant Francisco Puga Camacho filed a renewed request for compassionate release pursuant to 18 U.S.C. § 3582(c).  ECF Nos. 192, 198.  This case was before the Honorable Judge Koh and reassigned to the Undersigned on November 3, 2022.  ECF No. 194.

On March 6, 2019, Defendant pled guilty to Count 1 of the Superseding Indictment for conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C §§ 846, 841(a)(1), and 841(b)(1)(A)(viii).  ECF No. 105.  On June 19, 2019, Judge Koh sentenced Defendant to 74 months imprisonment and 5 years of supervised release.  ECF No. 151.  Defendant is currently serving his sentence at Fort Worth Medical Center ("FMC Fort Worth") in Texas.  His projected release date is February 9, 2025.

Judge Koh previously denied Defendant's motions for compassionate release on two

occasions. On June 7, 2021, Defendant moved for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 173. On July 1, 2021, the Court denied Defendant's motion. ECF No. 183. On July 22, 2021, Defendant filed a motion for reconsideration, in which Defendant claimed that he has exhausted his administrative remedies and that he has "naturalized citizenship" in the United States. ECF No. 186. The Court again denied Defendant's motion, finding that although it did not appear that Defendant had exhausted his administrative remedies, "[e]ven if Defendant had exhausted administrative remedies and was lawfully in the United States, the Court would still deny Defendant's motion because Defendant has not demonstrated extraordinary and compelling reasons for compassionate release." ECF No. 191 at 2. Judge Koh noted that Defendant had received his first and second doses of the Pfizer-BioNTech COVID-19 vaccine and, at that time, had served only 24 months of his 74-month sentence. *Id.* at 2–3.

Defendant again moves for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). He filed his first motion for compassionate release ("First Motion") on October 31, 2022 (ECF No. 192), before his case was reassigned to the Undersigned, and an additional motion for compassionate release ("Second Motion") on February 8, 2023 (ECF No. 198). The government opposes Defendant's motions. ECF No. 206.

## II. LEGAL STANDARD

Section 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), provides that a court may modify a previously imposed sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Under this provision the court may reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In determining whether "extraordinary and compelling reasons" exist for reducing the defendant's sentence, the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 § 3582(c)(1)(A). The Court must also ensure

that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III. DISCUSSION

In his First Motion, Defendant cites the Covid-19 pandemic coupled with his underlying health conditions as an extraordinary and compelling reason warranting his release. Defendant's Second Motion seeks a reduction in sentencing based on a disparity in the Sentencing Guidelines which treats "actual" or pure methamphetamine more severely than methamphetamine mixtures. U.S.S.G. § 2D1.1. The government contends that a reduction of Defendant's sentence is not warranted in either case and that his proposed release plan is inadequate.[1] The Court addresses each argument in turn.

As a procedural matter, it is undisputed that Defendant exhausted his administrative remedies pursuant to Section 3582(c)(1)(A). *See* ECF Nos. 192 at 7; 206 at 3.

#### A. Extraordinary and Compelling Reasons

##### 1. Medical Conditions

Section 3582(c)(1)(A)(i) does not specifically define what constitutes "extraordinary and compelling circumstances" but the "Application Notes" of § 1B1.13 of the United States Sentencing Guideline ("U.S.S.G.") set forth the following categories: "(1) medical conditions which diminish the ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories." *United States v. Davis*, No. 98-CR-40082-YGR, 2021 WL 5816283, at *1 (N.D. Cal. Nov. 9, 2021) (citing U.S.S.G. § 1B1.13, Application Note 1(A)). Although the Sentencing Commission's policy statement set forth in § 1B1.13 is binding on motions for compassionate release brought by the

---

[1] Because the Court finds that Defendant has not met his burden of demonstrating an extraordinary and compelling reason warranting his compassionate release, the Court need not address the government's arguments regarding the adequacy of Defendant's release plan or whether Defendant poses a danger to his community pursuant to the sentencing factors, 18 U.S.C. § 3553(a).

Case No.: 5:17-cr-00520-EJD-2
ORDER DENYING REQUESTS FOR COMPASSIONATE RELEASE
3

BOP and not those which are defendant-filed, it may nevertheless "inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *see also United States v. Juarez*, No. 17-CR-00554-PJH-1, 2022 WL 4544698, at *2 (N.D. Cal. Sept. 28, 2022).

In his First Motion, Defendant asserts that his underlying medical conditions place him at serious risk of death or severe illness from COVID-19 and constitute "extraordinary and compelling reasons" justifying his release. ECF No. 192. Defendant is 53 years old. He alleges that he suffers from Type 2 Diabetes, Primary Hypertension, Hyperlipidemia, sleep apnea, age-related cataract, Astigmatism, and Hypermetropia (farsightedness). *Id.* at 1–2. As a result of these conditions, he asserts that he is immunocompromised and at risk of infection or re-infection of Covid-19. *Id.* at 2. Defendant cites multiple cases where district courts found shortcomings in FMC Fort Worth's efforts to mitigate the spread of Covid-19. *Id.* at 3 (citing *United States v. Merrill*, No. 2:02-CR-00277-EFF (E.D. La. Aug. 5, 2020); *United States v. Johnson*, No. 96-CR-00176, 2020 WL 3618682 (S.D. Tex. July 2, 2020); *United States v. Chopra*, No. 18-CR-20668, 2020 WL 4333507 (S.D. Fla. 2020)).

These cases are distinguishable from Defendant for several reasons. All the cases cited by Defendant are compassionate release motions that were granted during the height of the Covid-19 pandemic and predate widespread Covid-19 vaccinations. Indeed, many courts, including this Court, have since denied motions for compassionate release where the defendant has received immunizations. *See, e.g.*, *United State v. Quintero*, No. 5:11-CR-00550-EJD, 2021 WL 4846929, at *3 (N.D. Cal. Oct. 18, 2021) ("That Defendant was vaccinated and recovered from COVID-19 provides a measure of protection."); *United States v. Sineneng-Smith*, No. 10-CR-00414-BLF-1, 2022 WL 1304106, at *2 (N.D. Cal. May 2, 2022) ("[T]he fact that Ms. Sineneng-Smith has received a COVID vaccine and booster lowers her risk of adverse consequences from the virus."); *United States v. Schmuel*, No. 19-CR-03006-BAS-1, 2022 WL 623914, at *1 (S.D. Cal. Mar. 2, 2022) ("A review of Defendant's medical records demonstrates that he is 56 years old and has been fully vaccinated against COVID-19, including a booster shot."). Certainly, there are medical

Case No.: 5:17-cr-00520-EJD-2
ORDER DENYING REQUESTS FOR COMPASSIONATE RELEASE
4

conditions, such as the risk factors identified by the CDC, that in combination with Covid-19 may warrant compassionate release notwithstanding vaccination. *See, e.g.*, *United States v. Lonich*, No. 14-CR-00139 SI, 2021 WL 1668062, at *1 (N.D. Cal. Apr. 28, 2021) (granted compassionate release where defendant is a 66-year-old vaccinated man who suffers from prostate cancer, hypertension, high cholesterol and sleep apnea); *United States v. Kearney*, No. 18-CR-00017-ELH, 2023 WL 2788626, at *3 (D. Md. Apr. 5, 2023) (reducing sentence of a vaccinated defendant who suffered from diabetes, stroke, heart disease and morbid obesity). Those conditions are not present here.

First, Defendant is not an advanced age, which may exacerbate deteriorating health and place individuals at an increased risk of death or severe illness from Covid-19. *See USA v. Kramer*, No. 5:16-CR-00322-EJD-1, 2023 WL 361092, at *3 (N.D. Cal. Jan. 23, 2023). Second, Defendant's various medical conditions, including diabetes, hypertension, and eye conditions, are being treated and appear to be well-controlled at this time. Defendant does not contend that he is receiving inadequate treatment for his conditions. Third, FMC Forth Worth appears to be effectively managing Covid-19, reporting 0 Covid-19 infections at this time. ECF No. 206 at 7. Fourth, Defendant is fully vaccinated and recently received his third booster shot. ECF No. 206 at 2. While being vaccinated does not preclude compassionate release, "district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection." *United States v. Smith*, 538 F. Supp. 3d 990, 996 (E.D. Cal. 2021). None of these conditions appear to have changed since Judge Koh's denial of Defendant's motion for reconsideration.

Accordingly, Defendant has failed to meet his burden of demonstrating "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A). Should Defendant's health and the conditions at FMC Forth Worth change to support a motion for compassionate release in the future, Defendant may renew his motion.

### 2. Disparity Argument

Defendant also seeks a reduction in sentencing based on the disparity in the Sentencing

Case No.: 5:17-cr-00520-EJD-2
ORDER DENYING REQUESTS FOR COMPASSIONATE RELEASE
5

Guidelines between "actual" or pure methamphetamine and "a mixture or substance containing a detectible amount of methamphetamine," whereby the Guidelines results in a higher baseline for pure methamphetamine. ECF No. 198. Pursuant to U.S.S.G. § 2D1.1, cmt. n.8(D), the converted drug weight table states that "1 gm of Methamphetamine = 2 kg" while "1 gm of Methamphetamine (Actual) = 20 kg," or a 1-to-10 ratio between a methamphetamine mixture and pure methamphetamine.

Defendant cites *Nawanna* where a defendant pled guilty to conspiracy to distribute 500 grams or more of methamphetamine mixture containing 50 grams or more of *pure* methamphetamine. *United States v. Nawanna*, 321 F. Supp. 3d 943 (N.D. Iowa 2018). Defendant Nawanna argued for downward variance on the basis that "the quantity and purity of methamphetamine involved in the offense play an outsized role in his advisory Guidelines sentencing range, because of the 10-to-1 ratio between actual (pure) methamphetamine (or ice) and methamphetamine mixture, pursuant to U.S.S.G. § 2D1.1, cmt. n.8(D)." *Id.* at 947. He contended that the ratio assumes "there is a supposed link between drug purity and culpability set out in U.S.S.G. § 2D1.1 cmt. n.27(C)." *Id.* The district court agreed and held "the methamphetamine Guidelines are based on a flawed assumption that methamphetamine purity is a proxy for role in the offense" and reduced the Guidelines sentencing range by one-third. *Id.* at 955. Defendant Camacho appears to suggest that his sentence should be reduced because he did not receive a similar downward departure.

The Government notes that Defendant was sentenced pursuant to the Guidelines for intent to distribute "500 grams or more of *a mixture or substance* containing a detectible amount of methamphetamine," and not actual or pure methamphetamine. ECF No. 206 at 8 (emphasis added); *see* Plea Agreement, ECF No. 103 at 1–2; *see also* Presentence Investigation Report ("PSR"), ECF No. 148 at 10. The Guidelines provide a base offense level of 34 for "[a]t least 5 KG but less than 15 KG of Methamphetamine, or at least 500 G but less than 1.5 KG of Methamphetamine (actual), or at least 500 G but less than 1.5 KG of 'Ice.'" U.S.S.G. 2D1.1. Defendant pled guilty to distributing 14 pounds or 6.35 kilograms of methamphetamine, for a base

Case No.: 5:17-cr-00520-EJD-2
ORDER DENYING REQUESTS FOR COMPASSIONATE RELEASE
6

offense level of 34. *Id.*; *see also* U.S.S.G. § 2D1.1 (c)(3). His sentencing range did not include pure methamphetamine like in *Nawanna*.

Accordingly, the "disparity" identified by Defendant is not applicable to his case.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motions for a reduction in sentence are **DENIED**.

**IT IS SO ORDERED.**

Dated: May 18, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:17-cr-00520-EJD-2
ORDER DENYING REQUESTS FOR COMPASSIONATE RELEASE
7